UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ARTHUR HUGGINS,

    Plaintiff,

v.   Case No: 8:22-cv-1183-WFJ-TGW

SCHOOL DISTRICT OF MANATEE COUNTY; MANATEE COUNTY SCHOOL BOARD; CYNTHIA SAUNDERS, in her official and individual capacities; PAUL DAMICO, in his and individual official capacities; MIKE BARBER, in his official and individual capacities; and ADAM WOOLARD, in his official and individual capacities,

    Defendants.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS

This matter comes before the Court on four Motions to Dismiss or, in the Alternative, for a More Definite Statement filed by Defendants Mike Barber, Paul Damico, Cynthia Saunders, and the School Board of Manatee County.[1] Dkts. 10,

---

[1] Though the case caption lists the School District of Manatee County and the Manatee County School Board as separate defendants, defense counsel indicated that these named Defendants are one and the same entity, properly identified as the School Board of Manatee County. Dkt. 1 at 1 n.1. The Court agrees.

11, 12, 13. Plaintiff Arthur Huggins filed responses to each motion. Dkts. 26, 27, 28, 29. Upon careful consideration, the Court grants in part and denies in part Defendants' motions. Specifically, Defendants' motions are granted in that they seek a more definite statement.

## BACKGROUND

Plaintiff is a Black resident of Bradenton, Florida. Dkt. 1-1 ¶¶ 5, 87. The city of Bradenton sits in Manatee County, where public schools are governed by Defendant School Board of Manatee County (the "School Board"). The School Board is headed by Defendant Superintendent Cynthia Saunders. *Id.* ¶ 8. Defendant Paul Damico serves as the School Board's Chief of Security, and Defendant Mike Barber is employed as the School Board's Communications Director. *Id.* ¶ 9−10. Defendant Adam Wollard,[2] a police officer for the Bradenton Police Department, provided security at the School Board's meetings during the time period relevant to this action. *Id.* ¶ 11.

As an active community leader, Plaintiff regularly attended the School Board's 2019 meetings to voice his opinions on community issues. *Id.* ¶¶ 30−31. Plaintiff contends that, upon realizing that its 2019 meetings were largely attended by Black citizens, the School District began to increase security measures by installing metal detectors, increasing police presence, and requiring bag checks in

---

[2] Defendant Wollard's surname is misspelled in the case caption. *See* Dkt. 24.

2

an effort to dissuade Black citizens from attending. *Id.* ¶¶ 19, 34. Plaintiff also contends that the School Board used police officers to intimidate Black citizens and moved the public comment portion of its meetings to the end of each meeting's agenda to deter Black citizens from speaking. *Id.* ¶ 19. Around this time, Plaintiff publicly criticized the School Board in an interview with a local news station. *Id.* ¶¶ 36–37.

On November 12, 2019, Plaintiff attended a four-hour meeting held by the School Board. *Id.* ¶¶ 20–21. After experiencing back pain, Plaintiff chose to stand against a wall during the meeting. *Id.* ¶ 22. Plaintiff claims he was then approached by Mr. Damico, the School Board's Chief of Security, who told Plaintiff that he needed to "either have a seat or leave the meeting." *Id.* ¶ 23. Though Plaintiff contends that he informed Mr. Damico of his back pain, Mr. Damico notified Officer Wollard of Plaintiff's refusal to find a seat. *Id.* ¶¶ 24–25. Upon being asked to leave the meeting room by Officer Wollard, Plaintiff complied and exited to the building's main lobby. *Id.* ¶¶ 26–27. While standing in the lobby, Plaintiff contends that Officer Wollard placed a hand on his back and forced him out of the building. *Id.* ¶ 27. Plaintiff was not allowed to return to the meeting to make a public comment. *Id.* ¶ 28.

One month later, the School Board held an executive session to discuss safety and security. *Id.* ¶ 39. There, the School Board watched a video containing

footage of "citizens and board members engaged in violent confrontations" during recent public meetings. *Id.* ¶ 41. The video included footage of Plaintiff being removed from the November 12th meeting. *Id.* ¶ 40. Mr. Barber, the School Board's Communications Director, allegedly provided the video to the Sarasota Herald Tribune for publication. *Id.* ¶ 42. Plaintiff asserts that the video has remained published online since December 27, 2019. *Id.*

In April 2022, based on the above allegations, Plaintiff filed the present lawsuit in the Circuit Court of the Twelfth Judicial Circuit in and for Manatee County, Florida. Dkt. 1-1. Defendants removed the case to this Court on May 23, 2022. Dkt. 1. Plaintiff's Complaint alleges ten counts. Though misnumbered,[3] the Court will refer to the counts as Plaintiff has labeled them. Count 1 asserts a claim of false imprisonment against the School Board, Ms. Saunders, Mr. Damico, and Officer Wollard. Dkt. 1-1 ¶¶ 43−48. Count 2 is a 42 U.S.C. § 1983 false imprisonment claim against the same four Defendants. *Id.* ¶¶ 49−56. In Count 3, Plaintiff brings an assault claim against Mr. Damico and Officer Wollard. *Id.* ¶¶ 57−60. Count 4 is a battery claim against the School Board based on a theory of vicarious liability. *Id.* ¶¶ 61−66. Plaintiff's Count 5 asserts a § 1983 free speech claim against the School Board, Ms. Saunders, Mr. Damico, and Officer Wollard.

---

[3] Plaintiff's Complaint begins with a Count 1 and concludes with two claims labeled Count 12, which the Court will refer to as Counts 12a and 12b. The Complaint does not contain a Count 7, 9, or 10.

4

*Id.* ¶¶ 67–78. In Count 6, Plaintiff brings a separate § 1983 free speech claim against Mr. Barber. *Id.* ¶¶ 79–83.

Next, Count 8 is a § 1983 claim against the School Board for violating Plaintiff's equal protection rights. *Id.* ¶¶ 84–93. Following Count 8, Plaintiff's Count 11 asserts a 42 U.S.C. § 1981 claim against all Defendants for violating Plaintiff's right to full and equal benefits under the law. *Id.* ¶¶ 94–98. In Count 12a, Plaintiff brings a claim of government retaliation against all Defendants pursuant to § 1983. *Id.* ¶¶ 99–110. Finally, Plaintiff's Count 12b is a claim against the School Board for violating section 286.0114, Florida Statutes. *Id.* ¶¶ 111–16.

Defendants Mike Barber, Paul Damico, Cynthia Saunders, and the School Board now separately move to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and failure to comply with the pleading requirements of Rules 8(a)(2) and 10(b). Dkts. 10, 11, 12, 13. Alternatively, they move for a more definite statement under Rule 12(e). *Id.*

## **LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a plaintiff must plead sufficient facts to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard does not require detailed factual allegations but demands more than an unadorned accusation. *Id.* In considering a Rule 12(b)(6) motion to dismiss, a complaint's factual allegations are

accepted as true and construed in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

Relatedly, Rules 8 and 10 establish the minimum pleading requirements for a complaint. Under the notice pleading standards set forth in Rule 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To comply with Rule 10, a plaintiff must also bring its claims in separate, numbered paragraphs, with each claim "limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). A complaint that violates either of these pleading rules is often disparagingly called a "shotgun pleading." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015). Dismissal of such a pleading is warranted under Rules 8(a)(2) and 10(b) when "it is *virtually impossible* to know which allegations of fact are intended to support which claim(s) for relief." *Id.* at 1325 (emphasis in original).

In addition to moving to dismiss for failure to comply with pleading requirements, a defendant facing a shotgun pleading may move for a more definite statement under Rule 12(e). *Barmapov v. Amuial*, 986 F.3d 1321, 1329 (11th Cir. 2021) (Tjoflat, J., concurring). In exercising the discretion afforded to it by Rule 12(e), a court may order a plaintiff to file a more definite statement after concluding that his complaint is too vague. *Id.* (Tjoflat, J., concurring).

## ANALYSIS

In each of their motions, Defendants contend that Plaintiff's Complaint constitutes an impermissible shotgun pleading. Dkt. 10 at 13−16; Dkt. 11 at 19−22; Dkt. 12 at 18−22; Dkt. 13 at 18−23. The Eleventh Circuit has identified four types of shotgun pleadings: (1) complaints in which each count adopts the allegations of all preceding counts; (2) complaints that are "replete with conclusory, vague, and immaterial facts"; (3) complaints that fail to separate each cause of action into separate counts; and (4) complaints that assert multiple claims against multiple defendants without specifying which defendant is responsible for which acts. *Weiland*, 792 F.3d at 1321−23. No matter the type, all shotgun pleadings exhibit the unifying characteristic of failing to give defendants adequate notice of the claims against them and the grounds upon which each claim rests. *Id.* at 1320. With this understanding, the Court agrees that Plaintiff's Complaint amounts to a shotgun pleading for at least two reasons.

First, Plaintiff's Complaint fails to separate each cause of action into separate counts. While Plaintiff's Count 1 false imprisonment claim asserts violations of two Florida constitutional provisions, Dkt. 1-1 ¶ 45, Plaintiff appears to actually base Count 1 upon Florida tort law, *see, e.g.*, Dkt. 29 at 5 (citing Florida tort cases). Because claims under Florida constitutional provisions and Florida tort law are distinct causes of action, Plaintiff must clarify the legal basis underlying

7

Count 1 to give Defendants adequate notice of the claims against them. *See Reynolds v. City of Daytona Beach*, No. 6:18-cv-1921-Orl-28LRH, 2019 WL 2412433, at *10 (M.D. Fla. May 22, 2019) (discussing dismissal of plaintiff's prior complaint for failure to clarify whether her false arrest claim was brought pursuant to the Florida Constitution or Florida tort law); *see also C.F.C. v. Miami-Dade Cnty.*, 349 F. Supp. 3d 1236, 1266−67 (S.D. Fla. 2018) (analyzing false imprisonment claims brought separately under the Florida Constitution and Florida tort law).

Plaintiff's Counts 2, 5, 6, 8, and 12a present similar issues, as Plaintiff alleges multiple violations of the Florida Constitution and/or United States Constitution within each of these § 1983 claims. Count 2 asserts violations of the Fourth and Fourteenth Amendments, Dkt. 1-1 ¶ 52, while Counts 5 and 6 both allege violations of the Florida Constitution and the First Amendment, *id.* ¶¶ 69, 81. Likewise, in Counts 8 and 12a, Plaintiff claims violations of First, Fourth, and Fourteenth Amendments. *Id.* ¶¶ 87, 107. Plaintiff's conflation of legal bases in these counts fails to afford Defendants sufficient notice of the claims against them. Plaintiff must replead his Complaint such that each count represents a single claim.

Second, while Plaintiff contends that his suit is against Ms. Saunders, Mr. Damico, Mr. Barber, and Officer Wollard in both their official and individual capacities, Dkt 1-1 ¶¶ 8−11, he does not clarify which counts are official capacity

claims and which counts are individual capacity claims. This is an important distinction, as "official capacity claims are substantively different than individual capacity claims." *Denson v. Cnty. of Collier*, No. 2:21-cv-497-JES-NPM, 2022 WL 294721, at *2 (M.D. Fla. Feb. 1, 2022) (citations omitted). A court must be able to determine whether a plaintiff is suing defendants in their individual or official capacities to ensure those defendants have received sufficient notice with respect to the capacity in which they are being sued. *See Young Apartments, Inc. v. Town of Jupiter*, 529 F.3d 1027, 1047 (11th Cir. 2008). Other courts in this district have found that a plaintiff's failure to differentiate individual and official capacity claims renders his or her complaint a shotgun pleading. *See Pinkson v. Univ. of S. Fla. Bd. of Trs.*, No. 8:15-cv-1724-T-33TBM, 2016 WL 3196474, at *6 (M.D. Fla. June 9, 2016) (citing *Thorn v. Randall*, No. 8:14-cv-862-T-36MAP, 2014 WL 5094134, at *2 (M.D. Fla. Oct. 24, 2014)).

Relatedly, Plaintiff concedes that the state law and § 1983 claims that he brings against Ms. Saunders, Mr. Damico, and Mr. Barber in Counts 1, 2, 5, 11,[4] and 12a are redundant, as he also brings those claims against their employer, the School Board. Dkt. 26 at 3; Dkt. 27 at 3; Dkt. 28 at 3. The Court agrees that these

---

[4] While Plaintiff states that he brings Count 11 under § 1981, that section provides substantive— not remedial—rights. *See Butts v. Cnty. of Volusia*, 222 F.3d 891, 894 (11th Cir. 2000). For present purposes, the Court construes Count 11 to be a § 1983 claim, as § 1983 provides the remedial scheme for violations of § 1981. *Id.* at 892−94. To continue pursuing this claim, Plaintiff must correctly plead Count 11 as a § 1983 claim.

9

state law and § 1983 claims brought against the School Board and its employees—presumably in their official capacities, given Plaintiff's concession—are redundant. Claims against a municipality's employees in their official capacities are the functional equivalent of claims brought against the municipality itself. *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (§ 1983 claims); *Geidel v. City of Bradenton Beach*, 56 F. Supp. 2d 1359, 1370 (M.D. Fla. 1999) (state law claims); *Braden Woods Homeowners Ass'n v. Mavard Trading, Ltd.*, 277 So. 3d 664, 670 (Fla. 2d DCA 2019) (same). Plaintiff should amend his Complaint to remedy this redundancy.

Plaintiff's Complaint is ultimately difficult to decipher as currently pled. As such, the Court finds that Defendants' alternative Motions for a More Definite Statement are due to be granted.[5] The Court declines to reach the merits of Plaintiff's claims at this time.

## CONCLUSION

Based on the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motions to Dismiss or, in the Alternative, for a More Definite Statement, Dkts. 10, 11, 12, 13. Specifically, Defendants' motions are **GRANTED**

---

[5] While Plaintiff's Complaint bears the hallmarks of a shotgun pleading, dismissal for failure to comply with Rules 8(a)(2) and 10(b) is not warranted because it is not "virtually impossible" to know which factual allegations are intended to support which claims. *See Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1325 (11th Cir. 2015); *see also Jackson v. Ocwen Loan Servicing, LLC*, No. 3:16-cv-10-J-39PDB, 2017 WL 238174, at *5 (M.D. Fla. Jan. 19, 2017).

to the extent they seek a more definite statement. Plaintiff may file an amended complaint that complies with the pleading requirements of Rules 8(a)(2) and 10(b) within **fourteen (14) days** of this order. The Court retains the authority to dismiss with prejudice shotgun pleadings that have not been corrected despite an opportunity to do so. *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1296 (11th Cir. 2018).

   **DONE AND ORDERED** at Tampa, Florida, on June 29, 2022.

               */s/ William F. Jung*
               **WILLIAM F. JUNG**
               **UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record