# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

ARTHUR HUGGINS,

      Plaintiff,

v.                                                    Case No: 8:22-cv-1183-WFJ-TGW

SCHOOL DISTRICT OF MANATEE
COUNTY, a Florida Governmental Entity;
MANATEE COUNTY SCHOOL BOARD,
a Florida Governmental Entity; CYNTHIA
SAUNDERS, in her official capacity and
also, individually; PAUL DAMICO, in his
official capacity and also, individually;
MIKE BARBER, in his official capacity and
also, individually; and ADAM WOLLARD,
in his official capacity and also, individually,

      Defendants.

_____/

## **<u>ORDER</u>**

This matter comes before the Court on five Motions to Dismiss filed by

Defendants Mike Barber, Paul Damico, Cynthia Saunders, the School Board of

Manatee County,[1] and Officer Adam Wollard. Dkts. 40, 41, 42, 43, 44. Plaintiff

Arthur Huggins filed responses in opposition. Dkts. 51, 56, 57, 58, 61. Upon

careful consideration, the Court grants-in-part Defendants' motions. Specifically,

_____

[1] The School District of Manatee County and the Manatee County School Board are one and the same entity, properly identified as the School Board of Manatee County. *See* Dkt. 43 at 1 n.1.

the motions are granted to the extent they seek dismissal of Plaintiff's federal claims. The Court further declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

## **BACKGROUND**

The Court set forth the factual background of this case in its prior order finding Plaintiff's original complaint to be a shotgun pleading. Dkt. 32. Because Plaintiff's Amended Complaint, Dkt. 37, asserts a handful of new factual allegations, the Court will recount the underlying facts in their entirety.

Plaintiff is a Black resident of Bradenton, Florida. Dkt. 32 ¶¶ 5, 20. The City of Bradenton sits in Manatee County, where public schools are governed by Defendant School Board of Manatee County (the "School Board"). The School Board is headed by Defendant Superintendent Cynthia Saunders. *Id.* ¶ 8. Defendant Paul Damico serves as the School Board's Chief of Security, and Defendant Mike Barber is employed as the School Board's Communications Director. *Id.* ¶ 9–10. Defendant Adam Wollard, a police officer with the Bradenton Police Department, provided security at the School Board's meetings during the time period relevant to this action. *Id.* ¶ 11.

As an active community leader, Plaintiff regularly attended the School Board's 2019 meetings to voice his opinions on community issues. *Id.* ¶¶ 40–41. Plaintiff contends that, upon realizing that its 2019 meetings were largely attended

2

by Black citizens, the School District began to increase security measures by installing metal detectors, increasing police presence, and requiring bag checks in an effort to deter Black citizens from attending. *Id.* ¶¶ 19, 44. Plaintiff also alleges that the School Board attempted to deter Black citizens from speaking at its meetings by moving the time for public comment to the end of each agenda and requiring citizens who wished to speak to sign up to do so beforehand. *Id.* ¶ 19. Around this time, Plaintiff notes that he publicly criticized the School Board in an interview with a local news station. *Id.* ¶¶ 46−47.

On November 12, 2019, Plaintiff attended a meeting held by the School Board. *Id.* ¶¶ 20. When Plaintiff first arrived at the meeting room, he claims Mr. Barber discouraged him from entering and told him no seats were available. *Id.* ¶ 22. Plaintiff states that he pointed out multiple open seats and was ultimately able to attend the meeting. *Id.* ¶¶ 23−24. Plaintiff was present at the meeting for approximately four hours. *Id.* ¶ 24. After experiencing back pain, Plaintiff contends that he eventually chose to stand against the meeting room's back wall in a nondisruptive manner. *Id.* ¶¶ 25−26.

While standing against the wall, Plaintiff states he was approached by Mr. Damico, who told Plaintiff that Ms. Saunders needed Plaintiff to "either have a seat or leave the meeting." *Id.* ¶ 27. Though Plaintiff contends that he informed Mr. Damico of his back pain, Mr. Damico notified Officer Wollard of Plaintiff's

refusal to take a seat. *Id.* ¶¶ 28−29. Upon being instructed to leave the meeting room by Officer Wollard, Plaintiff "complied because he had no other choice" and exited to the building's main lobby. *Id.* ¶¶ 30−31. While standing in the lobby, Plaintiff contends that Officer Wollard "placed his hand on his back" and forced him out of the building. *Id.* ¶ 31. Plaintiff later describes this contact as a forceful push. *Id.* ¶ 118. Plaintiff was not allowed to return to the meeting to make a public comment. *Id.* ¶ 32. Plaintiff contends that the School Board's written policy "only provides discretion to the Chairman to remove a citizen deemed disorderly" and that the School Board's presiding officer, Chairman Dave Miner, never asked that Plaintiff be removed from the meeting. *Id.* ¶¶ 33−34.

At a School Board meeting the following week, Ms. Saunders purportedly apologized to the School Board for Plaintiff's removal. *Id.* ¶ 36. Plaintiff asserts that Ms. Saunders stated that "the public is welcome inside this chamber, we will do better to make sure everyone is safe, and everyone feels that they are welcome." *Id.* Charlie Kennedy, the Vice Chair of the School Board, then apologized to Plaintiff for being removed from the November 12th meeting and stated that it would "not happen to [Plaintiff] or anybody else again." *Id.* ¶ 39. The same day, School Board member Scott Hopes allegedly expressed that the School Board did not follow its policies and procedures when removing Plaintiff from the meeting.

4

*Id.* ¶ 37. Mr. Hopes therefore made a motion to schedule an executive session for the discussion of meeting safety and protocols. *Id.* ¶ 38.

On December 10, 2019, the School Board held the requested executive session to discuss safety and security. *Id.* ¶ 49. There, the School Board watched a video created by Mr. Barber, the School Board's Communications Director. *Id.* ¶¶ 49, 52. Plaintiff states that the video contained footage of "public board meetings across the nation depicting citizens and board members engaged in violent confrontations" and included a clip of Plaintiff being removed from the November 12th meeting. *Id.* ¶¶ 50−51. Plaintiff alleges that the video asserted that Plaintiff's removal from the meeting prompted the School Board to enact increased security protocols, despite the implementation of those heightened measures occurring prior to November 12th. *Id.* ¶ 50. Plaintiff states that the video was ultimately used to suggest that Plaintiff and other citizens were dangers to the School Board. *Id.* ¶ 51. Mr. Barber later provided the video to the Sarasota Herald Tribune, a local newspaper, for publication. *Id.* ¶ 52. Plaintiff asserts that the video has remained published online since December 27, 2019. *Id.*

Based on the above allegations, Plaintiff filed his nineteen-count Amended Complaint against the above-styled Defendants. In Count 1, Plaintiff brings a false imprisonment claim against Officer Wollard in his official capacity and the School Board. *Id.* ¶¶ 53−60. Count 2 asserts another false imprisonment claim against

Officer Wollard, Ms. Saunders, and Mr. Damico in their individual capacities. *Id.* ¶¶ 61−69. Count 3 is a claim against Ms. Saunders, Mr. Damico, and Officer Wollard in their individual and official capacities for violations of Article I, Sections 9 and 12 of the Florida Constitution. *Id.* ¶¶ 70−77. In Count 4, Plaintiff brings a 42 U.S.C. § 1983 illegal seizure claim against Officer Wollard in his official capacity and the School Board. *Id.* ¶¶ 78−89. Plaintiff's Count 5 alleges a similar § 1983 illegal seizure claim against Ms. Saunders, Mr. Damico, and Officer Wollard in their individual capacities. *Id.* ¶¶ 90−98.

Next, Count 6 is an assault claim against Mr. Damico and Officer Wollard in their individual capacities. *Id.* ¶¶ 99−104. Count 7 asserts an assault claim against Officer Wollard in his official capacity and the School Board. *Id.* ¶¶ 105−13. Plaintiff's Count 8 is a battery claim against the School Board. *Id.* ¶¶ 114−20. In Count 9, Plaintiff brings a § 1983 free speech claim against Ms. Saunders, Mr. Damico, and Officer Wollard in their individual capacities. *Id.* ¶¶ 121−32. Count 10 is a similar § 1983 free speech claim against Officer Wollard in his official capacity and the School Board. *Id.* ¶¶ 133−49.

In Count 11, Plaintiff asserts a § 1983 First Amendment retaliation claim against Ms. Saunders, Mr. Damico, and Officer Wollard in their individual capacities. *Id.* ¶¶ 150−65. Plaintiff's Count 12 asserts a § 1983 First Amendment

retaliation claim against Mr. Barber in his individual capacity.[2] *Id.* ¶¶ 166−72. Count 13 is a § 1983 equal protection claim against the School Board, *id.* ¶¶ 173−82, and Count 14 is the same claim against Ms. Saunders in her individual capacity, *id.* ¶¶ 183−93. In Count 15, Plaintiff brings a § 1981 claim against the School Board. *Id.* ¶¶ 194−98. Plaintiff's Count 16 asserts another § 1983 First Amendment retaliation claim against Ms. Saunders and Mr. Damico in their individual capacities, Officer Wollard in both his individual and official capacities, and the School Board. *Id.* ¶¶ 199−211.

In Count 17, Plaintiff asserts that the School Board violated section 286.0114, Florida Statutes. *Id.* ¶¶ 212−21. Count 18 alleges a violation of Article I, Section 4 of the Florida Constitution by Ms. Saunders, Mr. Damico, and Officer Wollard in their individual and official capacities. *Id.* ¶¶ 222−34. Finally, Plaintiff's Count 19 is a civil conspiracy claim against Ms. Saunders, Mr. Damico, and Mr. Barber in their individual capacities. *Id.* ¶¶ 235−43.

Defendants now separately move to dismiss Plaintiff's Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6), 8(a), 10(b) and on the grounds of qualified immunity, sovereign immunity, and/or a failure to establish municipal liability. Dkts. 40, 41, 42, 43, 44.

---

[2] While Plaintiff's Amended Complaint fails to specify whether Count 12 is brought against Mr. Barber in his individual or official capacity, Plaintiff later clarifies that this is an individual capacity claim. *See* Dkt. 58 at 10−11.

## **LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a plaintiff must plead sufficient facts to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard does not require detailed factual allegations but demands more than an unadorned accusation. *Id.* In considering a Rule 12(b)(6) motion to dismiss, a complaint's factual allegations are accepted as true and construed in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

Relatedly, Rules 8 and 10 establish the minimum pleading requirements for a complaint. Under the notice pleading standards set forth in Rule 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To comply with Rule 10, a plaintiff must also bring its claims in separate, numbered paragraphs, with each claim "limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). A complaint that violates either of these pleading rules is often disparagingly called a "shotgun pleading." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015). Failure to correct a shotgun pleading after an opportunity to do so may result in dismissal with prejudice. *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1296 (11th Cir. 2018).

## ANALYSIS

In considering Defendants' Motions to Dismiss, the Court notes that Plaintiff has not corrected multiple pleading deficiencies previously identified by this Court, such as failing to separate all individual and official capacity claims. Though a court may dismiss with prejudice counts with pleading errors that have not been remedied, *see Vibe Micro, Inc.*, 878 F.3d at 1296, the Court prefers to address the sufficiency of Plaintiff's nineteen counts below. The Court first considers various Defendants' assertions of qualified immunity.

### I.  Qualified Immunity

In their Motions to Dismiss, Ms. Saunders, Mr. Damico, Mr. Barber, and Officer Wollard contend that the doctrine of qualified immunity bars several of Plaintiff's § 1983 claims brought against them in their individual capacities. *See* Dkts. 40, 41, 42, 44.

Qualified immunity protects government officials from being held liable in their individual capacities for discretionary actions taken in the course of their official duties. *Alcocer v. Mills*, 906 F.3d 944, 950−51 (11th Cir. 2018). The Supreme Court has repeatedly "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 231−32 (2009) (internal quotes omitted). A district court may therefore consider a qualified immunity defense on a motion to dismiss. *Chesser v. Sparks*,

248 F.3d 1117, 1122 (11th Cir. 2001).

An official entitled to qualified immunity must show that his or her actions were discretionary, meaning that he or she was (1) performing a legitimate job-related function, (2) through means that were within his or her power to utilize. *Spencer v. Benison*, 5 F.4th 1222, 1230−31 (11th Cir. 2021) (citations omitted). In assessing these two prongs, a court should look to the general nature of the official's action while temporarily disregarding whether it may have been committed for an unconstitutional purpose or in an unconstitutional manner. *Id.* at 1231; *Carruth v. Bentley*, 942 F.3d 1047, 1055 (11th Cir. 2019).

If the official establishes that his or her actions were discretionary, the burden shifts to the plaintiff to show that the official violated a constitutionally protected right that was clearly established at the time of the official's action. *Spencer*, 5 F.4th at 1231. To carry this burden, a plaintiff must show (1) a materially similar case giving notice to the defendant official, (2) a broader, clearly established principle that should control the case's novel facts, or (3) an exception of conduct so obviously violating the Constitution that encompasses the case. *King v. Lumpkin*, 545 F. App'x 799, 802 (11th Cir. 2013). In other words, the unlawfulness of the official's action must be apparent in light of pre-existing law. *Corbitt v. Vickers*, 929 F.3d 1304, 1312 (11th Cir. 2019).

The Court will consider each Defendant's assertion of qualified immunity

separately. *See Alcocer*, 906 F.3d at 951 ("[E]ach defendant is entitled to an independent qualified-immunity analysis as it relates to his or her actions and omissions.").

### 1.  Ms. Saunders

Ms. Saunders asserts that qualified immunity bars Plaintiff's § 1983 claims brought against her in Counts 5, 9, 11, 14, and 16. Dkt. 42 at 5. Each of these counts concerns Ms. Saunders' involvement in Plaintiff's removal from the November 12th meeting.

The Court first considers whether Ms. Saunders' conduct alleged in these five counts was discretionary. Ms. Saunders notes that, as Superintendent, she has a statutory duty to attend the School Board's meetings. *Id.* at 7 (citing Fla. Stat. § 1001.51). Ms. Saunders also correctly states that Florida school boards have broad discretion to maintain order during public meetings, including having law enforcement remove individuals deemed to be interfering with meetings. *Id.* at 8 (citing Fla. Stat. § 1001.372(3)).

Additionally, incorporated into the five subject counts against Ms. Saunders is Plaintiff's allegation that Ms. Saunders "has been delegated the responsibility for the supervision of instruction in the district as the secretary and executive officer of the Board." *See* Dkt. 37 ¶ 8. In Counts 5, 9, 11, and 14, Plaintiff also states that Ms. Saunders "[a]t all times mentioned herein . . . acted under color of law . . . and

with the authority of" the School Board. *Id.* ¶¶ 93, 123, 152, 184. Similarly, in Count 16, Plaintiff expressly states that the School Board "permitted" Ms. Saunders' conduct and "ratified" the policy under which she was allegedly acting. *Id.* ¶¶ 201, 203.

Given these statutory provisions and factual allegations, as well as the general nature of Ms. Saunders' alleged call for Plaintiff's removal from the School Board's meeting, the Court finds that Ms. Saunders was engaged in discretionary conduct. The burden then shifts to Plaintiff to show that Ms. Saunders violated a clearly established right through her actions alleged in Counts 5, 9, 11, 14 and 16.

Concerning Counts 9, 11, and 16, Plaintiff contends that Ms. Saunders' call for his removal from the November 12th meeting was an act of retaliation and in violation of his First Amendment right to free speech. In assessing this contention, the Court notes that "the guarantee of free speech is not absolute." *Langelier v. Coleman*, 861 F.2d 1508, 1512 n.6 (11th Cir. 1988). Plaintiff has not pointed to a materially similar case that demonstrates Ms. Saunders' conduct violates a clearly established First Amendment right. Nor can Ms. Saunders' conduct be said to so obviously violate the First Amendment. In what may be an effort to identify a broad principle that should control his case, Plaintiff contends that his removal from this limited public forum amounted to content-based and viewpoint-based

discrimination. Dkt. 51 at 5−9.

Plaintiff is correct that school board meetings that include periods for public comment are generally considered limited public forums. *See Jackson v. McCurry*, 762 F. App'x 919, 930 (11th Cir. 2019). Speech may therefore be restricted at such meetings through content-neutral time, place, and manner restrictions narrowly tailored to serve a significant government interest. *See Rowe v. City of Cocoa, Fla.*, 358 F.3d 800, 802−03 (11th Cir. 2004). Though Plaintiff contends Ms. Saunders' directing of his removal was based on his viewpoint or the content of his speech, he offers no support for this conclusory allegation. The Amended Complaint expresses that, prior to any public comment portion of the meeting, Plaintiff was asked to leave because he failed to take a seat. While Plaintiff also contends that Ms. Saunders' conduct had a chilling effect on the exercise of his free speech right, Dkt. 51 at 14, he admittedly attended another meeting held by the School Board one week later. Contrary to Plaintiff's assertion, *id.* at 14−15, an individual's exercise of free speech is not chilled simply because he did not get to speak at the time and place he desired. Accordingly, Plaintiff has not established that Ms. Saunders' violated any clearly established First Amendment right.

Likewise, Plaintiff has failed to show that Ms. Saunders violated any clearly established Fourth Amendment right as alleged in Counts 5. Plaintiff offers no materially similar case or broad principle that would suggest that Ms. Saunders'

13

conduct amounted to an illegal seizure. Ms. Saunders' conduct also cannot be said to so obviously violate the Fourth Amendment.

An unreasonable seizure occurs under the Fourth Amendment when a person's freedom of movement is restrained by means of physical force or a show of authority. *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968). Though Plaintiff claims that he was unlawfully seized in violation of the Fourth Amendment, Dkt. 37 ¶¶ 94−95, he does not explain how a school board official illegally seizes an individual by merely directing his removal from a meeting. There is no indication that Ms. Saunders detained Plaintiff or otherwise restrained Plaintiff's freedom of movement. Plaintiff has therefore failed to show that Ms. Saunders violated any clearly established right protecting against illegal seizures.

Concerning Count 14, Plaintiff again offers no support for his conclusory allegation that Ms. Saunders violated his Fourteenth Amendment right to equal protection.[3] Though he states that Ms. Saunders was motivated by race, *id.* ¶ 186, he provides no factual support for this conclusion. Plaintiff fails to specifically identify any similarly situated individual of another race who was treated differently when standing during one of the School Board's meetings. Without any comparators, Plaintiff cannot show that Ms. Saunders violated his clearly

---

[3] For reasons unclear, Plaintiff asserts that he is a "class of one" for purposes of Count 14. Dkt. 51 at 15. Count 14 asserts race discrimination, which is class-based discrimination. Plaintiff is therefore not a class of one for purposes of this claim.

established Fourteenth Amendment right to equal protection. *See Draper v. Reynolds*, 369 F.3d 1270, 1278 n.14 (11th Cir. 2004) (a plaintiff alleging a Fourteenth Amendment equal protection violation must point to similarly situated individuals who were treated differently).

Given that Ms. Saunders' alleged conduct was discretionary and not in violation of any clearly established rights, she is entitled to qualified immunity on Counts 5, 9, 11, 14, and 16.

### 2. Mr. Damico

Mr. Damico, the School Board's Chief of Security, also asserts that he is entitled to qualified immunity on the § 1983 claims brought against him in his individual capacity in Counts 5, 9, 11, and 16. Dkt. 41 at 5. These counts concern Mr. Damico's role in removing Plaintiff from the November 12th meeting.

As an initial matter, Plaintiff concedes that Mr. Damico was engaged in discretionary conduct as the School Board's Chief of Security when he directed Plaintiff's removal from the meeting. Dkt. 57 at 4. With the parties agreeing that Mr. Damico's actions were discretionary, the burden shifts to Plaintiff to show that Mr. Damico violated a clearly established right as alleged in Counts 5, 9, 11, and 16.

In Counts 9, 11, and 16, Plaintiff asserts that Mr. Damico engaged in retaliatory conduct and violated Plaintiff's First Amendment right to free speech by

15

directing Plaintiff's removal from the meeting. Though Plaintiff contends that Mr. Damico's conduct amounted to a prior restraint on speech, *id.* at 5, he fails to support this position. According to the Amended Complaint, Mr. Damico told Plaintiff to "either have a seat or leave the meeting." Dkt. 37 ¶ 27. Mr. Damico then retrieved Officer Wollard, who instructed Plaintiff to leave. *Id.* ¶ 30. There is no factual support for the assertion that Mr. Damico asked Officer Wollard to remove Plaintiff due to Plaintiff's viewpoint or planned speech. While Plaintiff also contends that Mr. Damico's conduct had a chilling effect on his exercise of free speech rights, Dkt. 57 at 5, this assertion lacks merit. As this Court has already noted, Plaintiff was in attendance at another meeting held by the School Board one week after his removal from the November 12th meeting.

Moreover, while Plaintiff's Count 5 asserts that Mr. Damico violated his Fourth Amendment right to be free from unreasonable seizures, Dkt. 37 ¶ 94, he again fails to explain how a school board employee illegally seizes an individual by directing his removal from a meeting. As with Ms. Saunders, there are no facts suggesting that Mr. Damico restrained Plaintiff's freedom of movement. Plaintiff does not point to any materially similar case or broad principle that should control these alleged facts, which do not so obviously violate the Fourth Amendment.

Because Mr. Damico was carrying out discretionary functions that did not violate Plaintiff's clearly established rights, he is entitled to qualified immunity on

Counts 5, 9, 11, and 16.

### 3.  Officer Wollard

Next, the Court considers Officer Wollard's claims of qualified immunity concerning Counts 5, 9, and 16. Dkt. 44 at 2. These claims pertain to Officer Wollard's removal of Plaintiff from the November 12th meeting.

The Court first considers whether Officer Wollard has demonstrated that his conduct was discretionary. As alleged in the Amended Complaint, Officer Wollard was providing security at the November 12th meeting while "act[ing] under color of law as a law enforcement officer[.]" Dkt. 37 ¶¶ 11, 92, 124. The Court has already noted that Florida school board officials may ask law enforcement authority to remove interfering individuals from meetings. *See* Fla. Stat. § 1001.372(3). Plaintiff himself alleges that Officer Wollard removed him from the meeting at the direction of Ms. Saunders and Mr. Damico. *See, e.g.*, Dkt. 37 ¶ 94. For these reasons, the Court finds that Officer Wollard was engaged in a discretionary action when he removed Plaintiff from the meeting.

The burden then shifts to Plaintiff, who fails to demonstrate that Officer Wollard's conduct violated any clearly established right with respect to Counts 5, 9, and 16. As with his First Amendment claims against Ms. Saunders and Mr. Damico, Plaintiff has not shown that any First Amendment right was violated as alleged in Counts 9 and 16. Contrary to Plaintiff's conclusory assertions, there is

17

no indication that Plaintiff was removed from the meeting based on his viewpoint or the content of his speech, nor that Officer Wollard even knew that Plaintiff planned to speak at the meeting.

Plaintiff also fails to show that Officer Wollard violated any clearly established Fourth or Fourteenth Amendment right against illegal seizures as alleged in Count 5. Plaintiff has not pointed to any materially similar case or broad principle suggesting these facts amount to an illegal seizure. Officer Wollard's conduct also cannot be said to so obviously violate the Fourth or Fourteenth Amendments. According to Plaintiff, Officer Wollard instructed him to leave the meeting room, and he complied. *Id.* ¶ 30. When Plaintiff attempted to remain in the building's lobby, Officer Wollard forced him to exit the building. *Id.* ¶ 31. This marked the end of their encounter.

As previously noted, a person is illegally seized where his freedom of movement is restrained by physical force or a show of authority. *Terry*, 392 U.S. at 19 n.16. "When the actions of the police do not show an unambiguous intent to restrain . . . a seizure occurs if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave." *Brendlin v. California*, 551 U.S. 249, 255 (2007) (internal quotation and citation omitted).

Nothing in the Amended Complaint suggests that Plaintiff's freedom of movement was restrained when Officer Wollard removed him from the meeting and made him exit the building. Though he was not permitted to return to the meeting or stay in the lobby, no facts indicate that Plaintiff could not have left the premises and carried about his day. *See O'Boyle v. Thrasher*, 638 F. App'x 873, 877−78 (11th Cir. 2016) (finding appellant was not illegally seized by police officer who ejected him from local government building); *McDonough v. Mata*, 489 F. Supp. 3d 1347, 1367 (S.D. Fla. 2020) (finding allegations that police officer pushed plaintiff and blocked his entry into government meeting did not rise to level of illegal seizure). No reasonable person in Plaintiff's position would have believed he was not free to leave in the circumstances alleged. Relatedly, there is no support for Plaintiff's conclusory allegation that he was detained such that his Fourteenth Amendment right to due process could be said to have been violated.

Given Officer Wollard was engaged in discretionary actions and did not violate Plaintiff's clearly established rights, he is entitled to qualified immunity on Counts 5, 9, and 16.

### 4. Mr. Barber

Lastly, Mr. Barber asserts that qualified immunity bars the § 1983 First Amendment retaliation claim brought against him in Count 12, which this Court

construes to be an individual capacity claim.[4] Count 12 alleges that Mr. Barber, the School Board's Communications Director, retaliated against Plaintiff in violation of his right to free speech and expressive conduct by providing a local newspaper with a video insinuating that Plaintiff is a danger to the School Board. Dkt. 37 ¶ 169.

The Court first considers whether Mr. Barber's alleged conduct was discretionary. As with his aforementioned claims against Ms. Saunders and Mr. Damico, Plaintiff expressly states that Mr. Barber was employed by the School Board and "[a]t all times mentioned herein . . . acted with the authority of" the School Board. *Id.* ¶¶ 110, 167. Given these clear assertions and Mr. Barber's undisputed role as the School Board's Communications Director, the Court finds that his dissemination of a video concerning School Board matters to a local newspaper was discretionary conduct.

Next, the Court considers whether Plaintiff has established that Mr. Barber violated any clearly established right to free speech and expressive conduct. Plaintiff has not identified a materially similar case or broad principle that should control these facts. The Court also finds that Mr. Barber's conduct did not so obviously violate the Constitution. As Mr. Barber notes, the video was originally viewed and considered during an executive session of the School Board, thereby

---

[4] *See supra* note 2.

making the video a public record under Florida's public records laws. Dkt. 40 at 8−9 (citing Fla. Stat. § 119.011(12)). In Florida, "public records" include "all . . . tapes, photographs, films, sound recordings . . . or other material  . . . made or received pursuant to law or ordinance or in connection with the transaction of official business of any agency." Fla. Stat. § 119.011(12). The School Board here is an "agency," which Florida law defines as "any state, county, district, authority, or municipal officer, department, division, board, bureau, commission, or other separate unit of government created or established by law[.]" *Id.* § 119.011(2). Accordingly, any person who desires to inspect or copy the subject video has a right to do so. *See id.* § 119.07(1)(a).

While Plaintiff emphasizes that the local newspaper did not make a public records request for the video, Dkt. 58 at 7, the fact remains that the video can be obtained by anyone who *does* make a public records request. Given this video is a public record subject to further dissemination upon request, it is unclear how Mr. Barber's dissemination of the same video to a local newspaper violates Plaintiff's clearly established First Amendment rights.

With Mr. Barber having engaged in a discretionary function that did not violate Plaintiff's clearly established rights, the Court finds that Mr. Barber is entitled to qualified immunity on Count 12.

21

## II. Federal Claims

Having dismissed Counts 5, 9, 11, 12, and 14, as well as Count 16 to the extent it is brought against Ms. Saunders, Mr. Damico, and Officer Wollard in their individual capacities, the Court turns to Plaintiff's remaining federal claims.

### A. Count 4: § 1983 Illegal Seizure

Plaintiff's Count 4 is a § 1983 illegal seizure claim against Officer Wollard in his official capacity and the School Board under a theory of vicarious liability. Dkt. 37 ¶¶ 79−89. Plaintiff clarifies that he brings this claim against Officer Wollard in his official capacity as an agent of City of Bradenton. Dkt. 61 at 4. In moving to dismiss Count 4, the School Board and Officer Wollard assert that Plaintiff has not stated a claim and has failed to establish the application of municipal liability. Dkt. 43 at 11−14; Dkt. 44 at 6−7.

Though Count 4 alleges violations of both the Fourth and Fourteenth Amendments, Dkt. 37 ¶¶ 83, 95, this count concerns the alleged unreasonable seizure of Plaintiff on November 12th. Accordingly, the Court finds that Count 4 must proceed under a Fourth Amendment theory. *See Alcocer*, 906 F.3d at 955 ("Where the Constitution provides an explicit textual source of constitutional protection for the violation alleged, we apply the analysis that constitutional provision requires, rather than the analysis dictated by the more generalized notion of substantive due process.") (internal quotes omitted).

22

As this Court previously discussed in its analysis of Defendants' qualified immunity claims, Plaintiff has failed to allege that Officer Wollard, Mr. Damico, or Ms. Sanders illegally seized him in violation of the Fourth Amendment. There is no indication that Plaintiff was detained or restrained when he was made to leave the meeting room and building. A reasonable person in Plaintiff's position would have believed he was free to leave *after being instructed to leave*. *See O'Boyle*, 638 F. App'x at 877–78; *McDonough*, 489 F. Supp. 3d at 1367.

Moreover, Plaintiff has not established that the School Board and City of Bradenton are subject to municipal liability on this claim. As the Supreme Court has explained, a local government may not be sued under § 1983 for an injury solely inflicted by its employees or agents. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). Rather, "municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479–80 (1986). A local government may be held liable only where "such constitutional torts result from an official government policy, the actions of an official fairly deemed to represent government policy, or a custom or practice so pervasive and well-settled that it assumes the force of law." *Doe v. Sch. Bd. of Broward Cnty., Fla.*, 604 F.3d 1248, 1263 (11th Cir. 2010) (citation omitted).

Here, Plaintiff contends that the School Board and City of Bradenton had "a

permanent and well-settled policy, practice, and custom to permit officers to illegal [sic] detain citizens that attend Board meetings." Dkt. 37 ¶ 87. However, Plaintiff fails to provide any facts suggesting that either agency truly had such a policy, practice, or custom. Plaintiff's only relevant factual allegation is that an individual was unlawfully arrested at one of the School Board's meetings in 2019. *See id.* ¶ 19. Though the Court takes this allegation as true at this stage, "an isolated incident, however unfortunate, does not demonstrate evidence of [a local government's] persistent or widespread policy and will not be considered so pervasive as to be a custom or practice." *Doe*, 604 F.3d at 1263 n.11 (internal quotes and citations omitted). Moreover, to the extent that Plaintiff alleges that Ms. Saunders acted as the agencies' "final policy decision maker . . . when she directed sworn law enforcement officers . . . to illegally detain citizens," Dkt. 37 ¶ 83, the Court has already determined that Plaintiff has not shown he was illegally detained.

With Plaintiff failing to state a § 1983 illegal seizure claim and further failing to establish municipal liability, Count 4 fails.

### B. Count 10: § 1983 Free Speech

Count 10 is a § 1983 free speech claim brought against Officer Wollard in his official capacity and the School Board through a vicarious liability theory. *Id.* ¶¶ 133−49. Plaintiff alleges that, as an agent of the City of Bradenton, Officer

Wollard violated his right to free speech by removing him from the November 12th meeting. *Id.* ¶¶ 136−38. He further asserts that the School Board "permitted, encouraged, tolerated, and ratified a pattern of practice or custom abridging freedom of speech[.]" *Id.* ¶ 143. Officer Wollard and the School Board contend that Count 10 fails to state a claim. Dkt. 43 at 14−15; Dkt. 44 at 12. Both Defendants also aver that Plaintiff has not shown that the School Board or City of Bradenton are subject to municipal liability for any such violation. Dkt. 43 at 9−11; Dkt. 44 at 12−13.

The Court agrees that Plaintiff has failed to state a First Amendment violation. The Court has already determined that Plaintiff has provided no factual support for his claims that Officer Wollard, Mr. Damico, and Ms. Saunders violated his freedom of speech. As previously explained, speech at school board meetings may be limited through content-neutral time, place, and manner restrictions to further the significant government interest of conducting orderly meetings. *See Rowe*, 358 F.3d at 802−03. Plaintiff lacks factual support for his contention that he was removed from the meeting based on his viewpoint or the content of his planned speech.

Moreover, even if Plaintiff had adequately alleged a free speech claim, Plaintiff has not shown that the School Board or City of Bradenton are subject to municipal liability for the same. As with Count 4, Plaintiff's contention that the

25

School Board and City of Bradenton have a policy, custom, or practice of abridging freedom of speech is unsupported. The practices identified by Plaintiff, such as an increase in security measures and a requirement that individuals planning to make a public comment sign up in advance, Dkt. 37 at 143, are not content-based or viewpoint-based restrictions on speech. Plaintiff provides no factual support for his contention that the alleged increase of security measures restricted his speech. Rather, Plaintiff continued to attend the School Board's meetings after these measures were put in place. *See id.* ¶ 50. Plaintiff also does not contend that the security measures applied to individuals based on their viewpoints or speech content.

Likewise, requiring all individuals to sign up in advance in order to make a public comment is a content-neutral time, place, and manner restriction narrowly tailored to serve the significant government interest of conducting orderly, efficient meetings. *See Thomas v. Howze*, 348 F. App'x 474, 478−79 (11th Cir. 2009) (policy requiring individuals to submit topics to commission beforehand and speak only during public comment portion of meeting was a narrowly tailored, content-neutral restriction). With no showing of a policy, custom, or practice abridging freedom of speech, Plaintiff has failed to show that the School Board or City of Bradenton are subject to municipal liability on this claim.

Count 10 fails, as Plaintiff has not sufficiently pled a free speech violation or

established the application of municipal liability.

### C. Counts 13 & 15: § 1983 Equal Protection

In Count 13, Plaintiff asserts that the School Board, via its employees or agents, violated Plaintiff's Fourteenth Amendment right to equal protection by removing him from the November 12th meeting due to his race. Dkt. 37 ¶¶ 173−82. Count 15 is a § 1981 claim similarly asserting that the School Board violated Plaintiff's right to full and equal benefits under the law by treating him differently than similarly situated white individuals. *Id.* ¶¶ 194−98. Concerning both counts, the School Board contends that Plaintiff has neither stated a claim nor established that it is subject to municipal liability. Dkt. 43 at 9−11, 17−21.

As this Court explained when dismissing Plaintiff's prior pleading, § 1983 provides the remedial scheme for violations of § 1981. *See* Dkt. 32 at 9 n.4; *Butts v. Cnty. of Volusia*, 222 F.3d 891, 892−94 (11th Cir. 2000). When faced with § 1981 claims alleging racial discrimination, courts in the Eleventh Circuit convert them to § 1983 claims. *Cunningham v. Sch. Bd. of Lake Cnty.,* No. 5:15-cv-480-Oc-30PRL, 2016 WL 1755612, at *3 (M.D. Fla. May 3, 2016) (collecting cases). The Court therefore construes Count 15 to be a § 1983 claim alleging racial discrimination.

To state a claim of race discrimination under the Fourteenth Amendment, a plaintiff must allege that "similarly situated persons have been treated disparately."

*Draper*, 369 F.3d at 1278 n.14; *see also Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008). Plaintiff identifies no similarly situated individuals whom any Defendant treated differently than Plaintiff. He therefore fails to state a claim in Counts 13 and 15.

Even if he had stated a claim in Counts 13 and 15, Plaintiff fails to establish that the School Board is subject to municipal liability on these claims. While Plaintiff alleges that the School Board "has a rich history of discriminating against minority races when they attend public meetings" and "harasses minority races and discourages minority participation," Dkt. 37 ¶¶ 176, he offers no factual support for these conclusory contentions. To the extent that Plaintiff again points to the School Board's heightened safety measures, such as increased police presence and the use of metal detectors at meetings, there is no indication that these measures did not equally apply to all individuals, regardless of race.

With no factual support for these claims and no showing of municipal liability, Counts 13 and 15 must be dismissed.

### D. Count 16: § 1983 Retaliation Claim

Having been dismissed as asserted against Ms. Saunders, Mr. Damico, and Officer Wollard in their individual capacities, Count 16 remains only against the School Board under a theory of vicarious liability and Officer Wollard in his official capacity. Plaintiff appears to have brought this official capacity claim

against Officer Wollard in his role as an agent of the City of Bradenton. Dkt. 61 at 4. In this count, Plaintiff asserts that the School Board's employees and Officer Wollard retaliated against Plaintiff by removing him from the November 12th meeting after he exercised his First Amendment rights. Dkt. 37 at 199−211.

To state a claim under § 1983 for First Amendment retaliation, a plaintiff must generally show: (1) he engaged in constitutionally protected speech, such as petitioning the government for redress; (2) the defendant's retaliatory conduct adversely affected that protected speech and right to petition; and (3) a causal connection exists between the defendant's retaliatory conduct and the adverse effect on the plaintiff's speech and right to petition. *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1289 (11th Cir. 2019). The School Board and Officer Wollard contend that Plaintiff has failed to adequately plead these elements and has not demonstrated that the School Board or City of Bradenton is subject to municipal liability for this alleged retaliation. Dkt. 43 at 9−11, 15−17; Dkt. 44 at 13.

The Court agrees that Plaintiff fails to state a claim for First Amendment retaliation against the School Board or Officer Wollard. Plaintiff has not adequately demonstrated that he suffered an adverse action as the term is understood in this context. "A plaintiff suffers an adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from

the exercise of First Amendment rights." *Bennett v. Hendrix*, 423 F.3d 1247, 1254

(11th Cir. 2005). Here, Plaintiff's removal from the November 12th meeting after

being warned to take a seat or leave does not amount to an adverse action. Viewing

the facts in a light most favorable to Plaintiff, a person of ordinary firmness would

not be deterred from exercising his First Amendment rights after being asked to

leave a school board meeting for failing to comply with an instruction to find a

seat. Again, Plaintiff's allegations suggest that he was not deterred by this incident,

as he attended another meeting held by the School Board the following week.

In any event, Plaintiff fails to show that the School Board and City of

Bradenton are subject to municipal liability on this claim. Plaintiff alleges that it is

the School Board's "policy to retaliate against citizens that speak against their

decisions[.]" Dkt. 37 ¶ 208. However, as with his other § 1983 claims against the

School Board, Plaintiff provides no facts to support this conclusory statement.

Likewise, the only factual allegation that Plaintiff makes against the City of

Bradenton in this count is that the City knew or should have known "its conduct

was unreasonable and created a deterrent that violates citizen's [sic] rights to

petition for redress of grievances." *Id.* ¶ 205. It is unclear what Plaintiff means by

the City's "conduct," as Plaintiff has not provided any explanation as to what role

the City of Bradenton plays in matters of the School Board. The Amended

Complaint is ultimately devoid of facts showing the School Board or City of

30

Bradenton truly had a policy, practice, or custom of retaliating against citizens based on their speech.

Count 16 is therefore dismissed, as Plaintiff fails to state a claim and has not established that the School Board and City of Bradenton are subject to municipal liability on this count.

## III. State Claims

Plaintiff also brings several state law claims against the above-styled Defendants in Counts 1, 2, 3, 6, 7, 8, 17, 18, and 19. However, having dismissed with prejudice all of Plaintiff's federal claims, the Court declines to exercise its supplemental jurisdiction over these non-diverse state law claims. *See* 28 U.S.C. § 1367(c)(3); *see also Hicks v. Moore*, 422 F.3d 1246, 1255 n.8 (11th Cir. 2005) ("Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.") (citation omitted).

<u>**CONCLUSION**</u>

Based on the foregoing, Defendants' Motions to Dismiss, Dkts. 40, 41, 42, 43, 44, are **GRANTED-IN-PART**. Plaintiff's federal claims are **DISMISSED WITH PREJUDICE**.[5] The Court further declines to exercise its supplemental

---

[5] Plaintiff has demonstrated that amendment of his current pleading is futile. He unsuccessfully sought to file an untimely second amended complaint that the Court determined differed only slightly from the operative Amended Complaint and did not remedy any deficiencies alleged by the Motions to Dismiss. *See* Dkt. 59 at 2–3. Dismissal with prejudice is therefore warranted.

jurisdiction over Plaintiff's state law claims. The Clerk is directed to enter

judgment accordingly and close this case.

      **DONE AND ORDERED** at Tampa, Florida, on September 7, 2022.

             */s/ William F. Jung*
             **WILLIAM F. JUNG**
             **UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record